**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-00717-CMA

S.P.,

      Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

      Defendant.

---

**ORDER AFFIRMING DENIAL OF SUPPLEMENTAL SECURITY INCOME BENEFITS**

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff S.P.'s application for supplemental security income benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the denial of benefits.

## I.    <u>BACKGROUND</u>

### A.    PROCEDURAL HISTORY

Plaintiff first filed an application for Supplemental Security Income Benefits under Title XVI of the Social Security Act on May 12, 2017. (Doc. # 13-5 at 136.)[2] Plaintiff alleges a disability onset date of July 21, 2016, when she experienced back pain while

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The exhibits filed at Doc. # 13 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 13-2) and the page number from the Administrative Record (*e.g.*, at 43).

hiking. (*Id.*; Doc. # 13-10 at 499.) Plaintiff claims disability due to degenerative disc disease in her cervical and lumbar spine and chronic back pain. (Doc. # 13-3 at 60–61.)

Plaintiff's application for supplemental security income was first denied on September 7, 2017. (Doc. # 13-4 at 74.) Plaintiff filed a written request for a hearing on September 18, 2017. (*Id.* at 79.) ALJ Scott Bryant held a hearing concerning Plaintiff's application on April 24, 2019. (Doc. # 13-2 at 31.) Both Plaintiff and an impartial vocational expert, Jeff Cockrum, testified at the hearing. (*Id.*)

On May 17, 2019, the ALJ denied Plaintiff's request for supplemental security income. (*Id.* at 13.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 12, 2017, the date of her application. (*Id.* at 18.) At step two, the ALJ found that Plaintiff has one severe impairment: degenerative disc disease. (*Id.*) The ALJ noted that Plaintiff's other alleged impairments, including migraines, did not constitute severe medically determinable impairments because they did not meet the 12-month-durational requirement, were well controlled with treatment, or otherwise were not adequately supported by medical evidence in the record. (*Id.*) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the disability regulations. (*Id.* at 19.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following abilities and limitations:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can reach constantly in any direction with her bilateral upper extremities, except for never doing so overhead. The claimant will occasionally use a cane to ambulate. For

> every two hours in being in a seated position, the claimant will need to stand or walk for 5 minutes while remaining on task and productive. The claimant can frequently use ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently stoop, kneel, crouch, or crawl. The claimant can have occasional exposure to temperature extremes, vibrations, unprotected heights, or hazardous machinery. The claimant can be expected to be off task 5% of the workday to manage her medical conditions.

(*Id.* at 20.)

At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 23.) Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, work experience, and RFC. (*Id.* at 24.) Therefore, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. (*Id.*)

Plaintiff requested review of the ALJ's decision. (*Id.* at 11.) The Appeals Council denied her request for review on January 17, 2020. (*Id.* at 1.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff initiated the instant action on March 16, 2020. (Doc. # 1.) She filed her Opening Brief (Doc. # 16) on August 31, 2020. The Commissioner filed a Response Brief (Doc. # 17), and Plaintiff followed with her Reply (Doc. # 18).

**B.     RELEVANT EVIDENCE BEFORE THE ALJ**

Plaintiff first complained of soreness in her back in August 2016, after she had been hiking. *See* (Doc. # 13-10 at 499.) Plaintiff was 30 years old at that time. (*Id.*) Approximately a week and a half after her hike, her back pain became severe enough that she went to the ER and received pain medication. (Doc. # 13-9 at 411.) Plaintiff

engaged in physical therapy to help alleviate her pain symptoms and was prescribed

pain medication. *See* (*Id.* at 426.) In October 2016, Plaintiff had a consultation at a

neurosurgery clinic with Brian P. Witwer, M.D. (Doc. # 13-10 at 506.) Imaging of

Plaintiff's lumbar spine revealed left-sided disc herniation. (*Id.*) Dr. Witwer noted that

Plaintiff had normal range of motion in her neck and back, and he recommended

conservative treatment options, including possibly physical therapy and epidural spinal

injections. (*Id.*)

Plaintiff's back pain continued to worsen, and in December 2016 she had

another consultation with Dr. Witwer. (*Id.* at 513.) Plaintiff elected to undergo lumbar

fusion surgery that same month instead of continuing with more conservative treatment

options. (*Id.*) At a follow-up appointment in January 2017 after her surgery, Plaintiff

reported that her left leg pain was resolved and that she would like to wean off her pain

medication. (*Id.* at 515.) An examination showed that Plaintiff had 5/5 strength

throughout her upper and lower extremities without weakness or muscle atrophy. (*Id.*)

Despite the surgery, Plaintiff continued to complain of back pain in 2017. In April

2017, she reported that physical therapy was not helping her symptoms. (*Id.* at 518.) In

May 2017, she had a positive straight leg test, and flexion and extension were painful.

(Doc. # 13-8 at 295.) However, examinations throughout 2017 showed that Plaintiff had

5/5 strength and no weakness or atrophy of the muscles, *see* (Doc. # 13-10 at 518,

528.), and imaging in April 2017 showed no evidence of recurrent disc herniation in her

lumbar spine, (*id.* at 524). Plaintiff described her pain as ranging from 2-8 on a 0-10

scale and reported that she had some pain relief from her TENS unit, pain medication, swimming, and rest. (*Id.* at 543.)

Plaintiff reported lower back pain again in July 2017, and Dr. Witwer noted she would be an "excellent candidate for a spinal cord stimulator." (*Id.* at 528.) A temporary stimulator significantly improved Plaintiff's lower back pain, *see* (Doc. # 13-11 at 579), and Plaintiff underwent placement of a permanent spine nerve stimulator in December 2017, *see* (*id.* at 576).

In early 2018, Plaintiff complained of symptoms of neck pain. (*Id.* at 574.) In March 2018, Plaintiff had another neurosurgery consultation where she reported her neck and bilateral arm pain as a 7/10. (Doc. # 13-12 at 709.) An examination showed that she had normal range of motion, full strength, and normal muscle tone. (*Id.* at 712.) Imaging showed stenosis and some degenerative changes of Plaintiff's cervical spine. (*Id.* at 713.) In April 2018, Plaintiff reported that she was capable of performing light work, could manage most of her personal care with help, and was limited with walking, sitting, and standing by her pain levels. (Doc. # 13-34 at 1603–04.) In May 2018, imaging showed that the degenerative changes of the cervical spine had worsened, and Dr. Witwer recommended surgical intervention in the form of fusion of the cervical spine. (Doc. # 13-12 at 719.) An examination at that time showed that Plaintiff had full strength, no muscle atrophy, normal gait, and normal range of motion. (*Id.* at 718.) Plaintiff underwent the recommended spinal fusion surgery for her cervical spine in May 2018. (*Id.* at 726.)

Plaintiff reported back and neck pain again in July and August 2018. (Doc. # 13-32 at 1401; Doc. # 13-33 at 1475–76.) An examination showed that she had no difficulties with balance, coordination, or gait, and she had symmetric strength throughout her upper and lower extremities. (Doc. # 13-32 at 1402.) She continued to show 5/5 strength and no muscle atrophy, and her hardware appeared well aligned and stable with no swelling. (Doc. # 13-33 at 1475–76.) In January 2019, imaging of Plaintiff's spine showed no stenosis and that her spinal stimulator was stable. (Doc. # 13-34 at 1591.)

      1.    <u>Opinion of Kristi Haan, PA-C</u>

Ms. Haan, a member of Plaintiff's primary care team at Western Colorado Physicians Group, provided general care to Plaintiff on a regular basis for over 10 years. *See* (Doc. # 16 at 6.) Relating to Plaintiff's back pain, Ms. Haan examined Plaintiff on multiple occasions and referred Plaintiff to Dr. Witwer for neurological consultations and to Tara Albright, PT, for physical therapy. In May 2017, Ms. Haan filled out a Colorado Department of Human Services Med-9 form for Plaintiff in which she opined that Plaintiff was expected to be disabled for 6 months. (Doc. # 13-7 at 293.) Ms. Haan also completed a physical residual functional capacity questionnaire and opined that Plaintiff could sit for about two hours in a workday, could stand or walk for about two hours in a workday, could rarely lift less than 10 pounds, and required a cane or other assistive device to ambulate. (*Id.* at 291–92.) In September 2017, Ms. Haan completed an impairment questionnaire in which she opined that Plaintiff could sit for less than one hour in an 8-hour workday and stand for less than one hour in a workday,

could never lift any weight, and was likely to miss more than three workdays a month. (Doc. # 13-10 at 553–57.) Ms. Haan filled out a cervical spine medical source statement in August 2018 in which she opined that Plaintiff was likely to be off task for more 25% of the workday, would likely be absent from work more than four days a month, and would be significantly limited by needing to take unscheduled breaks to lie down every 30-60 minutes and by being able to sit and stand/walk for less than two hours in an 8-hour workday. (Doc. # 13-13 at 834–38.) Ms. Haan also opined that Plaintiff could rarely lift less than 10 pounds, could never twist, stoop, crouch, or climb ladders or stairs, and had significant limitations with reaching and handling. (*Id.*)

## II.     LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass*, 43 F.3d at 1395.

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases"

and citing cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, *3 (N.D. Okla. June 27, 2018). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.     DISCUSSION

Plaintiff raises two arguments on appeal: (1) the ALJ failed to properly analyze whether Ms. Haan's opinions were supportable and consistent in accordance with the new regulations when he determined that Ms. Haan's opinion was not persuasive; and (2) the ALJ erred by summarily concluding that Plaintiff's degenerative disc disease did not meet, equal, or exceed the criteria for Listing 1:04 for disorders of the spine. (Doc. # 16 at 4, 12.) The Court will address each argument in turn.

### A.     WHETHER THE ALJ PROPERLY CONSIDERED THE MEDICAL OPINION OF KRISTI HAAN, PA-C

New regulations changed the procedures and standards for evaluating medical source opinions for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c. The new regulations provide that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source opinion using

five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contract the medical opinion. 20 C.F.R. § 416.920c(c).

Supportability and consistency are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ must explain his approach to these two factors, but he need not expound on the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.*; *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[F]or supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone*, 2021 WL 319354, at *6. Stated differently, a supportability inquiry examines how well a medical source supported and explained their opinion. *Id.* Consistency, on the other hand, is "an all-encompassing inquiry" that focuses on how well a medical source opinion is supported, or not supported, by the entire record. *Id.*

In the instant case, the ALJ correctly applied the new regulations set forth in 20 C.F.R. § 416.920c in determining the persuasiveness of each medical opinion.[3] *See* (Doc. # 13-2 at 22.) The ALJ considered Ms. Haan's opinions and determined that some

---

[3] The parties agree that the new regulations apply to this case because Plaintiff filed her application on May 12, 2017, after the new regulations went into effect on March 27, 2017. *See* (Doc. # 16 at 4; Doc. # 17 at 11.)

of the stated limitations therein, including limiting Plaintiff to sedentary work, were consistent with the record and Plaintiff's complaints of back and neck pain. (*Id.*) However, the ALJ determined that Ms. Haan's opinions that Plaintiff was likely to miss more than four days of work per month, was limited to sitting and/or standing for less than one hour per day, and could never lift any weight were unpersuasive. (*Id.* at 22–23.) The ALJ observed that Ms. Haan's opinions "appear[ed] inconsistent with the claimant's consistently unremarkable exams, with a normal spinal range of motion, normal gait, and normal reflexes." (*Id.* at 22.) Further, the ALJ noted that Ms. Haan's opinions were inconsistent with Plaintiff's statements that she experienced good pain relief from her stimulator and moderate relief from her medications. (*Id.*) The ALJ observed that Plaintiff "stated herself that she can perform light duty work." (*Id.* at 23.) As such, the ALJ determined that Ms. Haan's opinions were "overly limiting" and inconsistent with the record as a whole. (*Id.* at 22–23.) The ALJ also found that Ms. Haan's opinion from the Colorado Department of Human Services Med-9 form was not supportable because Ms. Haan did not indicate what objective medical evidence she relied upon in forming her opinion. (*Id.* at 23.)

The Court finds that the ALJ applied the correct framework under the new regulations in determining that Ms. Haan's opinion was not persuasive, and substantial evidence in the record supports the ALJ's determination. The ALJ appropriately noted that Ms. Haan's opinions were more restrictive than Plaintiff's self-assessment, insufficiently supported by objective medical records, and inconsistent with ongoing examination records that Plaintiff had normal strength, gait, and range of motion. The

ALJ was not required to consider the longitudinal treatment relationship that Ms. Haan had with Plaintiff because the ALJ found that Ms. Haan's opinions were not supportable or consistent with the evidence in the medical record. It is the ALJ's prerogative to weigh the medical evidence before him. *See Guillar v. Commissioner*, 845 Fed. Appx. 715, 719 (10th Cir. 2021) (unpublished). Because the ALJ's decision is supported by more than a scintilla of evidence, the Court will not disturb his findings. *See id.*

**B.    WHETHER THE ALJ ERRED IN DETERMINING THAT PLAINTIFF'S IMPAIRMENT DOES NOT MEET A LISTING**

Plaintiff next argues that the ALJ erred at step three by finding that Plaintiff's degenerative disc disease does not meet, equal, or exceed Listing 1.04 for disorders of the spine. (Doc. # 16 at 12.) The Court agrees with the Commissioner that the ALJ's decision that Plaintiff's impairment did not meet all of the criteria of Listing 1.04 for 12 consecutive months is supported by substantial evidence. (Doc. # 17 at 8–9.)

"At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks omitted). The listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 404.1525) (emphasis omitted). "For a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530. The claimant must demonstrate that all of the criteria are continuously present for a period of at least

one year. *See Davison v. Colvin*, 596 F. App'x 675, 678 (10th Cir. 2014) (unpublished) (listing cannot be met if criteria are intermittently satisfied).

To meet Listing 1.04, a claimant must show, as relevant here, disorder of the spine (*e.g.*, degenerative disc disease) resulting in compromise of a nerve root or the spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.04.

In determining that Plaintiff's degenerative disc disease did not meet Listing 1.04, the ALJ noted that the medical evidence did not include evidence of nerve root compression as is required by Listing 1.04 and that Plaintiff retained full range of motion and was able to ambulate independently. (Doc. # 13-2 at 19.) Although the ALJ's analysis at step three was brief, the ALJ directed the reader to refer to his later discussion of Plaintiff's range of motion and ability to ambulate to support his step three conclusion that Plaintiff's disorder did not meet the full criteria of Listing 1.04. (*Id.*)

Plaintiff cites *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), to argue that the ALJ's analysis at step three is a "bare conclusion" and that the ALJ failed to support his findings by adequately discussing the evidence. (Doc. # 16 at 14.) However, the "summary conclusion" at step three that the Tenth Circuit disapproved of in *Clifton* is distinguishable: In that case, the ALJ "did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three, or even identify the relevant

13

Listing or Listings; he merely stated a summary conclusion that [claimant's] impairments did not meet or equal any Listed Impairment." *Clifton*, 79 F.3d at 1009. In the case at hand, the ALJ correctly identified the relevant Listing and discussed examples of how the evidence showed that Plaintiff's degenerative disc disease did not meet all of the criteria of Listing 1.04. *See* (Doc. # 13-2 at 19.) The ALJ also referred to his later discussion of the evidence showing that Plaintiff consistently had normal range of motion, no muscle atrophy or muscle weakness, and could ambulate independently. *See* (*id.* at 21–23.) Thus, even if the ALJ erred by insufficiently discussing the evidence at step three, the Court finds that any error is harmless because "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Plaintiff also objects to the ALJ's statement at step three that "[t]he medical evidence does not include evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04." (Doc. # 16 at 14–15.) Plaintiff points to an MRI from October 2016 that showed "[l]eft-sided herniated disc L4-5 causing severe lateral recess narrowing compressing the L5 nerve root L5 radiculopathy" as evidence of nerve root compression. *See* (Doc. # 13-8 at 392.) However, Plaintiff then underwent lumbar spinal decompression surgery in December 2016, and a subsequent MRI in April 2017 showed "no evidence of recurrent disc herniation." (Doc. # 13-10 at 525.) Plaintiff does not point to any other evidence of nerve root compression in the record. Because the evidence in the medical record does not

show nerve root compression that lasted for the requisite 12 months, the Court finds no

error in the ALJ's determination that the evidence did not show nerve root compression

as required by Listing 1.04.

Finally, Plaintiff argues that the ALJ ignored substantial relevant evidence,

including Plaintiff's positive straight-leg tests, in determining at step three that Plaintiff's

impairment did not meet Listing 1.04. (Doc. # 16 at 13.) In so arguing, Plaintiff

misunderstands the standard for meeting Listing 1.04, which requires that **all** of the

listing's criteria be satisfied. Because evidence in the medical record did not establish

several of the criteria of Listing 1.04, including limitation of motion and muscle

weakness or muscle atrophy resulting in sensory or reflex loss, Plaintiff cannot establish

a per se disabling impairment at step three. *See Patterson v. Colvin*, 662 Fed. Appx.

634, 637 (10th Cir. 2016) (unpublished) ("[Plaintiff's] failure to satisfy all the listing's

criteria means that he cannot prevail at step three as a matter of law."). The Court also

notes that the ALJ discussed Plaintiff's positive straight leg tests elsewhere in his

decision. (Doc. # 13-2 at 21); *see Fischer-Ross*, 431 F.3d at 734 (concluding that an

ALJ's detailed findings elsewhere in a decision may support a step three determination

under review). In any event, the ALJ is not required to discuss every piece of evidence.

*Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014).

The Court finds that substantial evidence supports the ALJ's conclusion that

Plaintiff did not meet her burden to establish that she satisfied Listing 1.04. The

evidence in the medical record shows that Plaintiff consistently demonstrated 5/5

strength in her upper and lower extremities, had normal range of motion, and exhibited

no muscle atrophy or weakness. Accordingly, the Court affirms the ALJ's finding at step three that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that the ALJ's denial of supplemental security income benefits is AFFIRMED.

DATED: December 30, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge